**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MARK A. BERRY                           :
    Plaintiff                            :
v                                       :        Civil Action No. PJM-06-1162
CORPORAL OKERYS, *et al.*               :
    Defendants                           :

**MEMORANDUM**

Pending are Defendants' Motions to Dismiss or for Summary Judgment. Papers No. 33 and 34. Also pending is Plaintiff's Motion for Summary Judgment. Paper No. 29. All motions are opposed. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Defendants' Motions to Dismiss or for Summary Judgment, construed as Motions for Summary Judgment shall be granted.

**Background**

On March 7, 2006, while incarcerated as a pre-trial detainee at the Montgomery County Correctional Facility (MCCF), Plaintiff underwent surgery for a fractured foot which had failed to heal properly.[1] Paper No. 34 at Ex. 1, pp. 16–17. Upon his return to MCCF, he was confined to the prison medical unit where he received post-surgical care. *Id*. at Ex. 2. Plaintiff's right leg was placed in a cast after surgery and he was instructed not to put any weight on that leg. *Id*. at Ex. 3 and 4. While in the medical unit Plaintiff was provided crutches. *Id*. at Ex. 2 and 3.

Plaintiff alleges that on April 4, 2006, despite his non-weight-bearing status he was discharged from the medical unit to general population by Dr. Tadesse. Paper No. 1 at p. 10. He claims he protested the discharge because he would be unable to function properly in general population, where he would be required to carry a tray of food in the cafeteria and where there are

---

[1] Plaintiff fractured his foot on January 26, 2006, the day of his arrest, while working at his landscaping job. Paper No. 34 at Ex. 1, p. 15 (transcript p. 55).

no showers with seats. *Id*. His complaints were dismissed and he was required to return to general population. He states that he was required to pack all of his belongings in a bag, which he was required to drag by through the prison compound because the escorting officer would not carry it for him. *Id*. at p. 11. Upon arriving in general population, Plaintiff was told he could not have crutches in his cell and would have to leave them with the officer stationed in the housing unit. *Id*. Plaintiff claims he was told to hop on one foot to the door of his cell and yell for an officer to bring his crutches if he needed to walk somewhere. *Id*. at p. 12.

During his deposition, Plaintiff explained that there was a call button in his cell to summon an officer if needed. Paper No. 34 at Ex. 1. On April 4, 2006, Plaintiff attempted to go to the door of his cell to see if the officer was at the desk before pressing the call button to ask for his crutches. Paper No. 34 at Ex. 1. Plaintiff, wearing flip-flops, and hopped on his left foot while holding onto the bunk in the cell with his left hand. *Id*. At deposition, Plaintiff speculated that his flip-flop broke,[2] causing him to fall to the floor, striking his head. *Id*. Plaintiff suffered a laceration to his head and a concussion, requiring hospitalization. Paper No. 1 at p. 13; Paper No. 34 at Ex. 1. He claims that upon his return to the prison medical unit, Dr. Tadesse stated that Plaintiff should not have been returned to general population. Paper No. 1 at p. 13. Dr. Tadesse denies making the statement. Paper No. 34 at Ex. 2.

## Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ.

---

[2] In his opposition Plaintiff does not admit that this was in fact the cause of his fall and takes issue with Defendants' characterization of his speculation as an admission. Paper No. 40.

P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court.  Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular epi-sodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to plaintiff's allegations.

"[A]n inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674, 681 (4th Cir. 2005). Defendants in the instant case have raised the exhaustion issue and Plaintiff has responded accordingly.

Plaintiff asserts that he filed grievances concerning the issues raised in the Complaint, but never received responses. *See* Paper No. 1. He reiterates his claim that his grievances were ignored in response to the pending dispositive motions. Papers No. 40 and 42. Given this information, the Court cannot say that Plaintiff did not exhaust his "available" remedies or that Defendants did not frustrate his efforts at exhausting same. *See Taylor v. Barnett*, 105 F.Supp.2d 483, 486 (E.D. Va. 2000). Accordingly, the merits of the claims will be addressed below.

**Analysis**

The Eighth Amendment[3] prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003)

---

[3] The constitutional protections afforded to a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

4

*citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000), *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not

5

those that could have been taken).

Plaintiff's claim against Dr. Tadesse is that he discharged him from the medical unit without regard to his medical condition because he did not have the ability to examine his foot while it was still in a cast. Papers No. 40 at p.3.  Additionally, Plaintiff asserts that even though Tadesse sent him into general population with crutches, he knew that Plaintiff was non-weight bearing and would not have suitable accommodations, e.g.,, Plaintiff would be unable to carry a tray of food to eat and unable to sit down while showering.  *Id*.

Dr. Tadesse asserts that Plaintiff was discharged to general population because his pain was manageable and there was no longer any need for monitoring by medical staff. Paper No. 34 at Ex. 2.  He states that Plaintiff was kept in the medical unit under close observation for one month following surgery.  *Id*.  Plaintiff returned to the orthopedic surgeon for follow up care on March 27, 2006.  *Id*.  The examination revealed no evidence of infection.  The surgical staples were removed and an x-ray of his right foot showed the fracture was healing.  *Id*. On April 4, 2006, Dr. Tadesse reviewed the medical records and noted that Plaintiff's recovery had been unremarkable, his vital signs were normal, his right toes were warm and he could move them freely, and he had no difficulty walking on crutches. *Id*.  In addition, Plaintiff's pain had been managed through use of non-narcotic pain medication since March 16, 2006.  *Id*.  Based on these factors, Plaintiff was discharged to general population with orders for a lower bunk and crutches. *Id*.  Dr. Tadesse further asserts that he was never informed that Plaintiff's assignment to general population was in any way problematic. *Id*.

To the extent that Plaintiff's claim against Dr. Tadesse represents a disagreement with his medical assessment, it fails to state a constitutional claim.  The evidence presented establishes that

Dr. Tadesse reviewed medical information regarding Plaintiff's condition prior to discharging him from the medical unit. Plaintiff's claim that Dr. Tadesse should have known he would be unable to function properly in general population even with crutches is belied by the record. Plaintiff admits in his deposition that he had access to a call button to contact an officer to retrieve his crutches and his description of the accident itself reveals that food was brought to the housing unit. Paper No. 34 at Ex. 1. Thus, there was no actual reason to believe that Plaintiff would be unable to function in a safe manner. The Motion for Summary Judgment filed by Dr. Tadesse will be granted.

Defendants Okerys, Fairley, Reed and Green admit Plaintiff was not permitted to keep crutches in his cell. Paper No. 33. They claim, however, that the cell was small enough that he could move around without unnecessarily risking injury. *Id*. The configuration of the cell is such that hopping on one foot across the cell to reach the door was not the only way to reach the door. *Id*. at Ex. 2. In fact, Plaintiff could have moved along the side of his bed, stood on his left foot and hopped once to reach the door or the call button. *Id*. Defendants assert that the cell is small enough that Plaintiff would have been able to touch both sides of the cell at the same time. *Id*. at p. 4. In short, the decision to have an officer hold Plaintiff's crutches until he needed them to leave his cell did not deprive Plaintiff of a safe means to move around in his cell.

In his opposition, Plaintiff asserts that correctional staff saw him struggling to move his property into his cell while trying to walk with crutches and callously refused to help him. Paper No. 40. He states that sending him into general population when he had a non-weight-bearing cast on his leg was simply wrong. *Id*. His claim against these Defendants is based on his assertion that each of them knew he required the use of crutches, but refused to rectify the situation prior to the fall resulting in a concussion.

7

While the Court agrees that Plaintiff was treated in an insensitive manner, the conduct alleged does not state a constitutional claim in light of the circumstances. The evidence presented establishes that Plaintiff was not forced to ignore important medical directives or to risk further injury in order to move around in his cell. A different conclusion may be appropriate if Plaintiff was deprived of all access to his crutches, forcing him to either place weight on his injured foot or hop on one leg for greater distances in larger spaces. Plaintiff's allegation that he was forced to carry his own property even though he was on crutches is, again, evidence of insensitive treatment, but not a constitutional violation. Accordingly, summary judgment will be granted in favor of Defendants.

To the extent that the Complaint raises a state law tort claim for negligence, the Court declines to exercise supplemental jurisdiction over the claim and will dismiss it without prejudice.

A separate Order follows.

Date: 3/16/07

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE